UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIMBERLY A. GRAVES,<br>Plaintiff,<br>v.<br>PACIFIC GAS and ELECTRIC COMPANY,<br>Defendant. | No. 2:25-cv-02558-DC-SCR<br><br>ORDER AND FINDINGS AND RECOMMENDATIONS |

Plaintiff Kimberly A. Graves proceeds pro se in this matter and asserts claims concerning a utility pole located on her property. Until a relatively recent survey, both Plaintiff and Defendant Pacific Gas and Electric Company ("PG&E") believed the pole was located on an adjacent parcel. This case accordingly concerns the question whether a landowner may seek legal redress upon discovering that a long-standing physical taking or trespass has in fact been on their property all along.

Because Plaintiff is proceeding pro se, this matter is referred to the undersigned pursuant to Local Rule 302(c)(21) and 28 U.S.C. § 636. Now before the Court is Defendant's motion to dismiss (ECF No. 5), Plaintiff's motions to e-file (ECF Nos. 4 & 21), and Plaintiff's motion for leave to file a first amended complaint (ECF No. 14). The Court now recommends the motion to

////

dismiss be **GRANTED** and the motion for leave to amend be **GRANTED**. The requests for e-filing are **DENIED**.

## BACKGROUND AND PROCEDURAL HISTORY

### I. Plaintiff's Complaint

Plaintiff initiated this action on September 8, 2025. ECF No. 1. In her complaint, Plaintiff alleges that she is the owner of the real property located at 1219 Stanislaus Street, in Stockton ("the Property"). ECF No. 1 at 2. Defendant PG&E allegedly installed and operates a utility pole on the Property without "a lawful easement, license, or other property right[]" granted by plaintiff or the preceding owners of the Property. *Id.* Plaintiff alleges that "for decades," PG&E mistakenly believed the pole was located on the parcel adjacent to hers. *Id.* She only learned about the pole being on the Property on September 22, 2023 after commissioning a professional survey. *Id.* Plaintiff then contacted PG&E regarding the pole; however, PG&E allegedly refused to negotiate just compensation, arguing that it had previously attained property rights for the pole's location by prescription. *Id.* Plaintiff argues that PG&E's continued physical occupation of the Property constitutes an unlawful taking and has caused "the permanent loss of [her] exclusive possession of a portion of the property, [l]oss of value to the remainder of her newly constructed development, and the burden of hosting PG&E's equipment[.]" *Id.* at 3. Plaintiff asserts (1) a takings claim under the Fifth Amendment; (2) a takings claim under the Fourteenth Amendment; and (3) an inverse condemnation claim under California law. *Id.* at 10.

### II. PG&E's Motion to Dismiss

PG&E filed a Motion to Dismiss on September 29, 2025. ECF No. 5. PG&E argues that Plaintiff fails to state a claim on two grounds: (1) the complaint does not adequately allege ownership at the time of the taking, and (2) even if the complaint adequately alleged ownership, the statute of limitations bars both Plaintiff's federal and state takings claims. *Id.* at 4-7. Furthermore, PG&E asserts that because Plaintiff offers no justification for her "decades-long delay in bringing a takings claim based on an obvious physical taking," *id.* at 6, she is not entitled to application of the delayed discovery rule to toll the statutes of limitations on either of her takings claims. *Id.* at 6-7.

### III. Plaintiff's Opposition to Motion to Dismiss, PG&E's Reply and Plaintiff's Sur-Reply

Plaintiff filed a timely opposition to PG&E's motion. ECF No. 10. In her opposition, Plaintiff argues that dismissal of her complaint is improper on four grounds: (1) she established that she is the owner at the time of the taking; (2) her claim is not untimely because the statute of limitations does not bar ongoing takings; (3) in the alternative, her claim is not untimely because she is entitled to application of the delayed discovery rule; and (4) even if Plaintiff's taking claims are time-barred, the complaint otherwise adequately states claims including trespass, unjust enrichment, and quiet title. *Id.* at 3-5.

PG&E filed a timely reply in support of its motion. ECF No. 11. PG&E reiterates its position that the complaint should be dismissed because Plaintiff lacks standing and her claims are time-barred. *Id.* at 2. In addition, PG&E contends that Plaintiff's opposition does not adequately refute dismissal because it "concedes that Plaintiff is seeking to pursue claims for a physical permanent taking that occurred under previous owners," and it fails to address existing federal and California caselaw establishing that "the statute [of limitations] begins to run when an entity takes physical possession of the property in a permanent fashion." *Id.* at 4 (citing *Vichy Springs Resort, Inc. v. City of Ukiah*, No. 24-CV-07106-JSC, 2025 WL 490465, at *3 (N.D. Cal. Feb. 13, 2025); *Otay Water Dist. v. Beckwith*, 1 Cal. App. 4th 1041, 1048–49 (1991)). PG&E also argues that any putative claims for trespass and unjust enrichment similarly fail because (1) trespass requires a showing of lawful possession of the premises at the time of the alleged trespass, which Plaintiff does not and cannot establish; and (2) unjust enrichment is derivative of a contract cause of action, and Plaintiff does not allege any facts warranting an inference that she conferred anything to PG&E at her own expense.[1] *Id.* at 3-5.

The Court also allowed Plaintiff to file a sur-reply. ECF No. 15. In her sur-reply, Plaintiff argues that her takings claims are not time-barred because PG&E's present use of the pole constitutes a "continuing physical invasion [that] gives rise to a new and independent cause of action each day the unlawful occupation continues." ECF No. 13 at 5. Addressing standing,

[1] Plaintiff's original complaint does not clearly assert claims for trespass or unjust enrichment.

Plaintiff argues that because the pole's presence is ongoing and continues to invade her possessory interest, she, as a successor, may recover for the ongoing injury. *Id.* at 8-9 (citing *Spaulding v. Cameron*, 38 Cal.2d 265, 267-68 (1952)). Plaintiff also argues that *Palazzolo v. Rhode Island*, 533 U.S. 606 (2001), which PG&E relies on, in fact supports her position because there, the Supreme Court declared that successive ownership does not extinguish takings claims where the government's interference is continuing. *Id.* at 7. In the alternative, plaintiff argues that whether the pole's presence and usage is permanent or continuing is a question of fact not meant for resolution on a motion to dismiss. *Id.*

**IV. Plaintiff's Motion for Leave to Amend**

Plaintiff filed a motion for leave to amend on November 5, 2025. ECF No. 14. In her motion, Plaintiff argues that she should be given the opportunity to amend her complaint because there is no evidence of undue delay, bad faith, repeated failure to cure deficiencies, undue prejudice, or futility. *Id.* at 3. In addition, Plaintiff expresses her intention to add a fraud claim to the instant action, which is supported by newly discovered evidence, and to request corresponding punitive damages. *Id.* at 5. Plaintiff's proposed amended complaint includes the following four cases of action: (1) Inverse Condemnation/Taking, (2) Continuing Trespass, (3) Unjust Enrichment/Restitution, and (4) Deceptive and Bad-Faith Conduct. ECF No. 14-2 at 3-4.

**V. PG&E's Opposition to Motion for Leave to Amend and Plaintiff's Reply**

PG&E filed an opposition to Plaintiff's motion seeking leave to amend. ECF No. 17. PG&E argues that Plaintiff should not be granted leave to amend on futility, undue delay, and prejudice grounds. *Id.* at 3. In asserting futility, PG&E emphasizes the "brightline rule" that takings and inverse condemnation "claims arising from physical occupations of land may be brought only by the owner of the property at the time of the taking," and that Plaintiff's claim is no exception to this rule. *Id.* at 2. With respect to Plaintiff's other state law claims, PG&E repeats its position that (1) Plaintiff's trespass claim is "fatally defective" for failure to show lawful possession of the premises at the time of the alleged trespass; and (2) Plaintiff's unjust enrichment claim is similarly "fatally defective" for failure to establish a contract or quasi-contract relationship with PG&E. *Id.* at 8-9. While not yet properly before the Court, PG&E also

argues that Plaintiff's intended fraud claim cannot withstand dismissal because Plaintiff fails to plausibly allege reasonable reliance on PG&E's misrepresentations or any directly resulting damages. *Id.* at 9-10. Finally, addressing undue delay and prejudice, PG&E argues that granting leave to amend would effectively moot its fully briefed motion and force it to rebrief the same dismissal arguments and respond to Plaintiff's amended complaint that will ultimately raise the same claims that are barred as a matter of law.

Plaintiff filed a timely reply in support of her motion. ECF No. 19. Plaintiff asserts that denying her leave to amend is improper on three grounds: (1) amendment of her takings claims is not futile; (2) she has adequately stated a claim for fraud; and (3) PG&E has not shown sufficient delay or prejudice to warrant denial of leave to amend.

### VI. Hearing

On November 20, 2025, Plaintiff and counsel for PG&E appeared and argued at a hearing on the motion to dismiss and motion for leave to amend.

## LEGAL STANDARD FOR MOTION TO DISMISS UNDER RULE 12(b)(6)

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint. *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A plaintiff is required to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In determining whether a complaint states a claim on which relief may be granted, the court accepts as true all well-pleaded factual allegations in the complaint and construes the allegations in the light most favorable to the plaintiff. *See Walker v. Fred Meyer, Inc.*, 953 F.3d 1082, 1086 (9th Cir. 2020). However, the court need not assume the truth of legal conclusions cast in the form of factual allegations. *See Paulsen v. CNF, Inc.*, 559 F.3d 1061, 1071 (9th Cir.

2009). Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

In ruling on a motion to dismiss under Rule 12(b)(6), the court is permitted to consider material that is properly submitted as part of the complaint, documents that are not physically attached to the complaint if their authenticity is not contested and the plaintiffs' complaint necessarily relies on them, and matters of public record. *See Lee v. City of Los Angeles*, 250 F.3d. 668, 688-89 (9th Cir. 2001).

The court may dismiss for failure to state a claim when the allegations of the complaint and judicially noticeable materials establish an affirmative defense or other bar to recovery, such as the expiration of the statute of limitations. *See Sams v. Yahoo! Inc*., 713 F.3d 1175, 1179 (9th Cir. 2013); *see also Goddard v. Google Inc*., 640 F. Supp. 2d 1193, 1199, n. 5 (N.D. Cal. 2009) (noting that "affirmative defenses routinely serve as a basis for granting Rule 12(b)(6) motions where the defense is apparent from the face of the [c]omplaint"). However, dismissal under Rule 12(b)(6) is improper if the allegations of the complaint and judicially noticeable materials concerning the defense involve disputed issues of fact. *ASARCO, LLC v. Union Pacific R. Co*., 765 F.3d 999, 1004 (9th Cir. 2014).

**LEGAL STANDARD FOR MOTION FOR LEAVE TO AMEND UNDER RULE 15**

Federal Rule of Civil Procedure 15(a)(2) requires opposing party's written consent or the court's leave to amend the Complaint. *See* Fed. R. Civ. P. 15(a)(2). Rule 15(a)(2) instructs that "[t]he court should freely give leave [to amend] when justice so requires." *Id.*

Courts within the Ninth Circuit interpret and apply Rule 15(a)'s policy with "extreme liberality," *Eminence Capital, LLC v. Aspeon, Inc.,* 316 F.3d 1048, 1051 (9th Cir. 2003), especially when the plaintiff is pro se and lacks the experience and guidance of counsel to avoid

pleading errors. *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000). In evaluating a motion for leave to amend, courts consider the following factors: (1) undue delay; (2) bad faith; (3) futility of amendment; and (4) prejudice to the opposing party. *Sharkey v. O'Neal*, 778 F.3d 767, 774 (9th Cir. 2015) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

## ANALYSIS

### I. The Motion to Dismiss

PG&E's motion advances two primary arguments in favor of dismissal: (1) failure to establish requisite ownership at the time of the taking; and (2) failure to bring a timely claim. As to the allegations in the original complaint, the Court agrees and recommends dismissal on both grounds.

#### A. Ownership at the Time of the Physical Taking

PG&E argues that Plaintiff has not stated a cognizable takings claim because she does not allege that she owned the Property when the pole was originally installed. ECF No. 5 at 4-5. PG&E relies on *Palazzolo*, where the Supreme Court noted the "general rule of the law of eminent domain" that the right to bring a Takings Clause claim concerning "direct condemnation" resides in the owner of the property "at the time of the taking." 533 U.S. 606, 628 (2001) (citing *Danforth v. United States*, 308 U.S. 271, 284 (1939)). PG&E also relies on *Tan Phu Cuong Inv. LLC v. King County* ("*Tan Phu Cuong*"), where the Ninth Circuit applied this rule from *Palazzolo* to affirm dismissal of the plaintiffs' takings claims. 831 F.App'x 235, 237 (9th Cir. 2020). *Tan Phu Cuong* concerned an attempt to assert a takings claim based on long-standing pooling and drainage issues. The *Tan Phu Cuong* panel held that takings claims "do not pass to subsequent purchasers, who are presumed to have been compensated for the invasion through a reduced purchase price" and held that the plaintiffs "did not suffer a physical taking because the pooling and drainage issues predated their purchase of the properties." *Id.* at 237. By analogy, according to PG&E, the fact that the pole was allegedly installed as early as 1950, but Plaintiff does not allege ownership of the Property until 2009, necessarily frustrates her takings claims.

Plaintiff argues that PG&E's reliance on *Palazzolo* is misplaced and, instead, supports her position by directing the Court to the *Palazzolo* court's declaration that "[f]uture generations, too,

have a right to challenge unreasonable limitations on the use and value of land." ECF No. 10 at 4 (citing *Palazzolo*, 533 U.S. at 627). However, the Supreme Court's "future generations" statement concerns property owners subjected to *regulatory* takings, where the Government "imposes regulations that restrict an owner's ability to use his own property." *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 148 (2021). By contrast, a physical taking occurs when the Government "physically takes possession of property without acquiring title to it." *Id.* at 147-48. Here, Plaintiff alleges that PG&E "never obtained a lawful easement, license, or other property right" authorizing the installation of the pole; nor did PG&E ever provide just compensation. ECF No. 1 at 6-7. The pole on Plaintiff's property falls squarely within the category of takings by physical occupation and is presumptively subject to the "general rule" that a takings claim may be brought by the owner at the time of the taking.

Plaintiff also attempts to distinguish *Tan Phu Cuong* by arguing that "it concerned a situation where the harm had already occurred and ended" and that her case involves *current* physical occupation. ECF No. 10 at 3. Contrary to Plaintiff's assertion, *Tan Phu Cuong* involved a physical invasion by water, which caused ongoing "standing water and soil percolation issues." *Tan Phu Cuong*, 831 F.App'x at 237. Indeed, evidence in the record demonstrated that the water drainage issues had existed for over 20 years, and perhaps as long as 50. *Id*. The *Tan Phu Cuong* court nonetheless treated the intrusion as a standard taking by physical occupation, disposing of it under the general rule from *Palazzolo*. Plaintiff's case presents a similar issue: The pole was allegedly installed over 50 years ago and continues to intrude on Plaintiff's property. There are no meaningful differences between Plaintiff's case, as pled in the initial complaint, and *Tan Phu Cuong*. *Tan Phu Cuong* constitutes persuasive authority that shows Plaintiff's Takings Clause claim as alleged in the complaint is not viable.

California inverse condemnation law applies effectively the same general rule. The California Supreme Court has recognized as a "long established principle[] of condemnation law" that "the right to recover [for inverse condemnation] remains in the person who owned the property at the time of the taking or damaging, regardless of whether the property is subsequently transferred to another person." *City of Los Angeles v. Ricards*, 10 Cal. 3d 385, 389 (1973).

Accordingly, Plaintiff's original complaint fails to state a federal or state takings or inverse condemnation claim.

**B. Statute of Limitations**

PG&E argues that even if Plaintiff had adequately alleged ownership, her Takings Clause claim is barred by the statute of limitations. ECF No. 5 at 5-7. PG&E asserts that Plaintiff needed to file her § 1983 claim within California's two-year statute of limitations for personal injury actions. *Id.* at 5 (citing *Jonas v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004); *Action Apartments Ass'n, Inc. v. Santa Monica Rent Ctrl. Bd.*, 509 F.3d 1020, 1026 (9th Cir. 2007)). PG&E also asserts that a federal takings claim accrues once the permanent nature of the Government action is evident, specifying this as "the date on which the plaintiff's land has been clearly and permanently taken." *Id.* at 6 (citing *Mildenberger v. United States*, 643 F.3d 938, 946 (Fed. Cir. 2011); *Boling v. United States*, 220 F.3d 1365, 1370 (Fed. Cir. 2011)). Therefore, if Plaintiff were in fact the owner at the time of the taking, her claim would have accrued upon the installation of the pole and become untimely well before the commencement of the instant action in 2025. *Id.* at 6. PG&E also contends that under California law, state takings claims are subject to a five-year limitations period. *Id.* at 7 (citing *Otay Water Dist.*, 1 Cal.App.4th at 1048-49). Therefore, Plaintiff's state inverse condemnation claim is similarly time-barred. *Id.* at 7. Finally, PG&E acknowledges that delayed discovery could toll the statute of limitations, but argues that Plaintiff has not adequately pled "(1) the time and manner of discovery; and (2) the inability to have made earlier discovery despite reasonable diligence." *Id.* at 6-7.

Plaintiff argues that her takings claims are not time-barred because the pole is a continuing physical occupation; therefore, the statute of limitations period has yet to begin running. ECF No. 10 at 3-4. However, the cases Plaintiff cites in support of her position are either not real or are irrelevant.[2]

---

[2] Plaintiff cites to *Boling v. Pub. Utils. Comm'n*, 105 Cal.App.3d 805 (1980) and *Loving v. Cnty. of Stanislaus*, 33 Cal.App.5th 444 (2019), which are not real cases. Plaintiff also cites to *Pierce v. Cnty. of Orange*, 526 F.3d 1190 (9th Cir. 2008), which does not discuss statute of limitations or continuing violation issues. At the hearing on these motions, the undersigned admonished Plaintiff about the danger of using Artificial Intelligence tools for legal research and writing and Plaintiff's obligation to ensure that all legal citations are legitimate. Future citations to non-

Determining the statute of limitations framework for these claims turns on the nature of the intrusion. In this respect, courts recognize "the distinction between 'permanent' and 'temporary' takings refers to the nature of the intrusion[.]" *Skip Kirchdorfer, Inc. v. United States*, 6 F.3d 1573, 1582 (Fed. Cir. 1993). A temporary invasion "refers to those governmental activities which involve an occupancy that is transient and relatively inconsequential[.]" *Hendler v. United States*, 952 F.2d 1364, 1377 (Fed. Cir. 1991). But "[a] 'permanent' physical occupation, as distinguished from a mere temporary trespass, involves a substantial physical interference with property rights." *Skip Kirchdorfer, Inc.*, 6 F.3d at 1582 (quoting *Hendler*, 952 F.2d at 1376). "Property rights in a physical thing have been described as the rights 'to possess, use, and dispose of it.'" *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 435 (1982) (citing *Andrus v. Allard*, 444 U.S. 51, 65-66 (1979)). "To the extent that the government permanently occupies physical property, it effectively destroys *each* of these rights." *Id*. at 435. It has been said the Government "does not simply take a single 'strand' from the 'bundle' of property rights: it chops through the bundle taking a slice of every strand." *Id.*

Here, the consequences of PG&E's pole on Plaintiff's property are similar to the consequences of permanent physical occupation. "First the owner has no right to possess the occupied space [themselves], and also has no power to exclude the occupier from possession and use of the space." *Id.* Here, PG&E occupies the Property through the pole, depriving Plaintiff of the ability to occupy the Property herself and to eject PG&E from it. "Second, the permanent physical occupation of property forever denies the owner any power to control the use of the property; [they] not only cannot exclude others, but can make no nonpossessory use of the property." *Id.* at 436. So long as PG&E's pole remains on the Property, Plaintiff may not exclude PG&E from the Property, proceed with any development project, or grant any unencumbered interests in the Property to third parties. "Finally, even though the owner may retain the bare legal right to dispose of the occupied space by transfer or sale, the permanent occupation of that space by a stranger will ordinarily empty the right of any value, since the

existent cases may subject Plaintiff to an order to show cause as to why she should not be sanctioned under Rule 11 of the Federal Rules of Civil Procedure.

purchaser will also be unable to make any use of the property." *Id.* at 436. If Plaintiff attempted to sell the Property, specifically the plot of land hosting PG&E's pole, any purchaser would be similarly deprived to their property rights in that portion of the land, rendering it of lesser value. Moreover, "whether a permanent physical occupation has occurred presents relatively few problems of proof. *Id.* at 437. The placement of a fixed structure on land or real property is an obvious fact that will rarely be subject to dispute." *Id.* PG&E's pole is a solid structure that is fixed into the ground. Accordingly, the Court finds that the pole constitutes a permanent physical occupation. Therefore, the statute of limitations began to run on the date the pole was originally installed, and Plaintiff's federal and state takings claims would be time-barred in the absence of tolling or application of the delayed discovery rule.

In the alternative, Plaintiff argues that the delayed discovery rule applies to her claims, tolling the statute of limitations until she learned that the pole was on her property and not the neighboring parcel. ECF No. 10 at 5-6. However, even assuming that Plaintiff can sufficiently plead delayed discovery, the necessary allegations are not in Plaintiff's complaint and, thus, not properly before the Court in ruling on the motion to dismiss. Accordingly, Plaintiff's complaint, as currently pled, fails to state a claim for relief under the delayed discovery rule.

**II. The Motion for Leave to File First Amended Complaint ("FAC")**

Plaintiff argues that her motion should be granted because none of the factors precluding amendment are present and good cause exists. ECF No. 14 at 2-3. Namely, Plaintiff seeks to clarify her takings claims, add a fraud claim, and request punitive damages. *Id.* at 4-5. On the other hand, PG&E argues that the motion should be denied on futility, undue delay, and undue prejudice grounds. ECF No. 17 at 3. The Court finds that amendment would not be futile and PG&E has not demonstrated sufficient prejudice or delay to warrant denial of leave to amend.

**A. New Facts in the Proposed Amended Complaint**

The Court starts by identifying some of the additional facts that Plaintiff includes in the proposed amended complaint but were not included in the original complaint. Plaintiff alleges that she acquired the Property in 2009, and at that time the boundary fencing and recorded maps indicated the pole was on adjacent land. ECF No. 14-2 at 2. In September 2023, a professional

survey "first revealed" that the pole was within the Property's boundaries. *Id*. Plaintiff also includes factual allegations about discussions with Defendant after this discovery, exchange of correspondence, and participation in a mediation. *Id.* at 2-3.

**B. Futility**

Although Plaintiff expresses her intention to add various state claims to her FAC, including trespass, unjust enrichment, and fraud, the primary focus of the Court's analysis is one the viability of the federal and state takings claims raised in the original complaint.

**1. Substantive Viability of Takings/Inverse Condemnation Claim**

**a. Ownership at Time of Taking**

In its opposition to Plaintiff's motion, PG&E argues that amendment is futile because a takings claim belongs to the owner at the time of the physical intrusion and exceptions for unknown intrusions should not be applied to Plaintiff. ECF No. 17 at 3-8.

Above, the Court found that in the original complaint, where Plaintiff *did not* allege facts concerning her recent discovery that the utility pole is on her property, Plaintiff failed to state a takings or inverse condemnation claim. However, in the proposed amended complaint and other briefing from this case, Plaintiff alleges facts showing that neither she nor PG&E knew that the utility pole was on her property until the survey she commissioned relatively recently. These additional facts distinguish this case from the type of long-standing and openly-known intrusion *Palazzolo* may have had in mind and which was at issue in *Tan Phu Cuong*.

In *Palazzolo*, the Supreme Court explained that physical invasions are generally readily identifiable, making the fact and extent of the takings known. *See Palazzolo*, 533 U.S. at 628. In such cases, it can be reasonably inferred that the owner looking to sell their property has factored the obvious invasion into the price, and the ultimate buyer has in fact purchased it at the reduced price. *Id.* Given the presumption that a subsequent owner has been duly compensated for the physical invasion of the property they acquired, it appears that the objective of the rule noted in *Palazzolo* is to prevent double recovery, where a subsequent owner benefits from governmental compensation in addition to a reduced purchase price. *See id.*

In the instant case, Plaintiff could allege that neither she (the subsequent purchaser),

PG&E (the condemning entity), nor the unidentified owner at the time of the taking had knowledge of the pole being located on the Property. *See* ECF No. 19 at 1-2 (contending that Plaintiff did not receive a reduced purchase price and that there was no recorded easement, visible encroachment, title exception, or other disclosure of the pole to indicate its presence on her property); ECF No. 10 at 4 (asserting that PG&E's own utility records assign the pole to a neighboring address). Moreover, drawing all inferences concerning Plaintiff's proposed amended complaint in Plaintiff's favor, the fact that PG&E was also ignorant of the pole being located on Plaintiff's property tends to prove that it never initiated direct condemnation proceedings against the former owner. It follows that the former owner never received just compensation and, thus, did not offer to sell the property at a reduced purchase price to account for the pole's presence on the property. Therefore, the Court finds unwarranted a presumption of knowledge of the physical invasion and a corresponding reduction in purchase price for the Property. Thus, to the extent that the soundness of *Palazzolo*'s "general rule" rests on this presumed knowledge and the concomitant notice provided through such knowledge, it may have no applicability here.

**b. Exceptions for Unknown Physical Intrusions**

Neither party has cited federal takings doctrine or California inverse condemnation doctrine concerning the legal standard to be applied when a plaintiff claims that no owner was aware of the physical intrusion on their property, or cases where the condemning entity was unaware of the same. As a result, the Court must determine what the rule on such facts should be in the first instance. Accordingly, the Court considers certain state approaches to similar issues to guide its futility analysis.

In *Consolidated Gas Services Company v. Tyler*, the Oklahoma Supreme Court allowed the defendant, a subsequent owner, to claim compensation for a buried pipeline laid on his property before he acquired it. 63 P.2d 88, 91-92 (Okla. 1936). There, the facts driving recognition of the exception were: (1) the pipeline was buried under the surface; (2) the owner had no knowledge of the pipeline's existence when he purchased the property; (3) there was no evidence in the record indicating that the former owner consented to the laying of the pipeline or had any knowledge of its placement; and (4) there was no evidence in the record to show that the

defendant purchased the property at a reduced price because of the existence of the pipeline. *Id.* at 91. In *Cox Enterprises, Ltd. v. Phillips Petroleum Co.*, the Oklahoma Supreme Court, relying on *Consolidated Gas*, allowed appellant, a subsequent owner, to proceed with an inverse condemnation claim arising from a buried pipeline laid on their property before acquisition. 550 P.2d 1324, 1326-27 (Okla. 1976). In *Cox*, the court identified the dispositive fact as the appellant's undisputed contention that they and their predecessors in title were unaware of the existence of the pipeline across their property. *Id.*

Given that *Consolidated Gas* and *Cox* focus on the significance of both a subsequent owner's and a former owner's lack of knowledge, the Court is persuaded that the exception articulated therein is applicable in the instant case. Moreover, the exception, deriving from the "well-settled" principle that "estoppel cannot be set up against a party ignorant of the true state of affairs," *Cox*, 550 P.2d at 1326 (quoting *St, L. & S.F. Ry. Co. v. Mann*, 192 P. 231, 233 (1920)), provides support rooted in long-standing doctrine "invoked to avoid injustice," *Heckler v. Cmty. Health Servs. of Crawford Cnty., Inc*, 467 U.S. 51, 59 (1984), and "promote[] fair dealing," that "often gives triumph to right and justice, where nothing else known to our jurisprudence can, by its operation, secure those ends." *Daniels v. Tearney*, 102 U.S. 415, 420 (1880). Unlike the rule concerning readily identifiable physical takings mentioned in *Palazzolo*, the Oklahoma exception properly accounts for PG&E's duty to pay just compensation and fairly considers what equitable relief may be appropriate given Plaintiff's naivety to the alleged wrong.

The Court also finds that the exception's relevance here is buttressed by its application to similar factual scenarios in other jurisdictions. For example, in *Kimco Addition, Inc. v. Lower Platte South Natural Resources District*, the Nebraska Supreme Court declared that "where the holder of an easement across property has the power of eminent domain for the use involved, an action for inverse condemnation is an appropriate remedy for a subsequent bona fide purchaser of the property who purchased without notice of the preexisting interest in land." 440 N.W.2d 456, 293 (Neb. 1989) (citing, among other cases, *Cox*, 550 P.2d at 1324). There, the Nebraska Supreme Court recognized that the appellant, a subsequent owner, was entitled to recovery through an inverse condemnation action, so long as the action was not time-barred, arising from

defendant's *unrecorded* expansion of its easement via widening of a drainage channel on plaintiff's property. *Id.* at 293-94. Similarly, in *Upper Eagle Valley Sanitation District v. Carnie*, the Colorado Court of Appeals upheld an order granting the subsequent-owner respondents an award for value of an easement for a sewer line constructed outside its recorded boundaries prior to plaintiff's acquisition of the property. 634 P.2d 1008, 1008-1010 (Colo. Ct. App. 1981). There, the court stressed the importance of protecting respondents' right to compensation, stating, "If respondents are not entitled to compensation, then they would suffer a loss and the petitioner would receive a windfall since presumably respondents paid their predecessors in title for the full unburdened property interest." *Id*. at 1010. "The constitutional requirement of just compensation derives as much content from the basic equitable principles of fairness … as it does from technical concepts of property law." *United States v. Fuller*, 409 U.S. 488, 490 (1973). Just as the *Palazzolo* rule seeks to protect the government from overpaying property owners, the exceptions explored above serve a parallel interest, ensuring that property owners are not left empty-handed when the government deprives them of their property without just compensation.

**c. Application of Exception to Plaintiff's Case**

The Court finds that the instant case falls within the ambit of exceptions to the *Palazzolo* rule and, thus, amendment is not futile. To reiterate, under the exception for unknown physical intrusions articulated in *Consolidated Gas* and *Cox*, a subsequent owner may bring a takings claim where the following factors are present: (1) the intrusion is not clearly visible on the property; (2) the subsequent owner had no knowledge of the intrusion on the date of purchase; (3) there is no evidence to indicate that the former owner consented to the intrusion or had any knowledge of its placement; and (4) there is no evidence to show that the subsequent owner received a reduced purchase price because of the intrusion on the property. In her briefing, Plaintiff sets forth factual content that tends to show she can amend to state a takings claim under the exception for unknown physical intrusions. With respect to the first factor, Plaintiff alleges that the pole was not clearly visible on her property because a physical fence line suggested the pole was on neighboring property. ECF No. 10 at 5. Second, Plaintiff alleges that she did not know and had no reason to know that the pole was on her property when she acquired ownership

because there were no recorded encumbrances on the title and PG&E, itself, assigned the pole to another address. *Id.* Third, there is nothing in the record showing that the former owner had knowledge of the pole being installed on the Property. Finally, Plaintiff contends that she did not receive a reduced purchase price for the property. ECF No. 19 at 1-2. However, like the third factor, it is too early to tell whether evidence exists as to whether Plaintiff in fact received a reduced purchase price. Accordingly, the Court finds that amendment is not futile as to the substantive aspects of the takings and inverse condemnation claims.

**2. Continuing Trespass**

Defendant argues that Plaintiff should not be allowed leave to amend her trespass claim because it is barred by the three-year statute of limitations. ECF No. 17 at 9. Defendant argues that this is not a continuing trespass because it is a solid structure—a utility pole. *Id.* at 8. Defendant further argues that only the owner at the time of the trespass may bring a claim. *Id*. at 9. As discussed further below, Plaintiff's proposed amended complaint alleges facts to support application of the delayed discovery rule. For the same reasons as discussed concerning the Takings Clause claim and the statute of limitations, the Court does not find that amendment would be futile as to the timeliness of the trespass claim.

As to whether Plaintiff owned the Property at the time of trespass, in briefing, there is reference to the pole being replaced in May 2015. ECF No. 10 at 11. Plaintiff alleges she owned the Property as of 2009. The Court will not conclude at this time that Plaintiff could plead no set of facts to support a claim of trespass. The Court is recommending granting leave to amend, and Plaintiff is not required to file the proffered amendment at ECF No. 14-2. The Ninth Circuit has stated that "before dismissing a pro se complaint the district court must provide the litigant with notice of the deficiencies in his complaint in order to ensure that the litigant uses the opportunity to amend effectively." *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012). Defendant's motion, in combination with this Order, provide Plaintiff notice of the deficiencies, and Plaintiff may amend accordingly.

**3. Unjust Enrichment/Restitution**

Defendant argues that amendment of this claim would be futile because unjust enrichment

is not considered a separate cause of action, but is generally a "quasi-contract" cause of action and Plaintiff has not pled facts supporting a quasi-contract claim. ECF No. 17 at 9. There is support for Defendant's assertion that California does not recognize unjust enrichment as a cause of action. *See Melchior v. New Line Prods., Inc.*, 106 Cal.App.4th 779, 793 (2003) ("there is no cause of action in California for unjust enrichment"). However, the Ninth Circuit has recognized that California law is not clear on this point. *See ESG Capital Partners v. Stratos*, 828 F.3d 1023, 1039 (9th Cir. 2016) ("Some California courts allow a plaintiff to state a cause of action for unjust enrichment, while others have maintained that California has no such cause of action."). Finding California law "unsettled" on this point, the Ninth Circuit stated: "We therefore allow the cause of action, as we believe it states a claim for relief as an independent cause of action or as a quasi-contract claim for restitution." *Id.*

The proposed amended complaint alleges that after Plaintiff learned the pole was on her Property in 2023, she contacted Defendant and Defendant tried to get her to sign a prescriptive easement. ECF No. 14-2 at 2. Plaintiff asserts the parties engaged in discussions, including written correspondence, for months and references a mediation. *Id*. at 2-3. Plaintiff does not clearly allege a contractual theory of liability, and it may be that there is no factual basis for pleading a contract claim, however that Court cannot determine at this time that amendment would be futile as to a quasi-contract claim.

**4. Deceptive and Bad-Faith Conduct**

Defendant argues that there is no claim under California law for "deceptive and bad-faith conduct" and that perhaps Plaintiff means to assert a claim for fraud. ECF No. 17 at 8. If so, Defendant argues the fraud claim is inadequately pled, and leave to amend would be futile. *Id*. at 9. Plaintiff's reply does not confirm whether the intended claim was fraud, but instead states she pled "intentional deception, misrepresentation, and coercive conduct" and that such conduct is covered by "multiple overlapping tort theories" including fraud and negligent misrepresentation. ECF No. 19 at 5.

Claims of fraud must be pled with particularity. Fed. R. Civ. P. 9(b). Rule 9(b)'s particularity requirement applies to state law causes of action. *See Vess v. Ciba-Geigy Corp.*, 307

F.3d 1097, 1103 (9th Cir. 2003). Even where fraud is not a necessary element of a claim, if the claim is "grounded in fraud" or "sound[s] in fraud," the "pleading of the claim as a whole must satisfy the particularity requirement of Rule 9(b)." *Id.* at 1103-04. In order to meet the heightened pleading standard, "a party must state the particularity of the circumstances constituting fraud," meaning that the "pleading must identify the who, what, when, where, and how of the misconduct charged." *United States ex rel. Cafasso v. Gen. Dynamics*, 637 F.3d 1047, 1055 (9th Cir. 2011) (internal citations and quotation omitted). Defendant merely argues that Plaintiff has not sufficiently pled her claim with particularity, this does not establish that amendment would be futile. The Court finds leave to amend is appropriate.

**5. Statute of Limitations**

In its motion to dismiss, PG&E argues that Plaintiff's takings claims are time-barred and that she has not adequately pled delayed discovery. ECF No. 5 at 6-7. However, PG&E does not maintain that amendment of the delayed discovery allegations would be futile in its opposition to Plaintiff's motion to file a FAC. After reviewing all the briefing in the record, the Court finds that Plaintiff could conceivably amend to state a claim for relief under the delayed discovery rule. In her opposition to PG&E's motion to dismiss, Plaintiff sets forth facts showing (1) the time and manner of discovery of the pole on her property; and (2) why she was unable to make that discovery earlier despite reasonable diligence. ECF No. 10 at 4-5. In addition, Plaintiff includes a declaration with her opposition (ECF No. 10 at 13), which clearly supports her argument. Therein she states there was a physical fence and/or natural boundary between her and an adjoining property and the pole appeared to be on the neighbor's land. She states Defendant's records reported the address of the pole as being on the neighbor's property. When she purchased the property and reviewed title documents, there was no easement, utility right, or other servitude recorded that showed the utility pole. ECF No. 10 at 13-14. Therefore, the Court finds that amendment would not be futile based on delayed discovery, and the putative expiration of the statutes of limitations is not dispositive at this stage.

**C. Undue Prejudice & Undue Delay**

PG&E also argues that it would face prejudice and undue delay if Plaintiff were granted

leave to file a FAC because it would have to rebrief its motion, which has already been fully briefed, argued, and taken under submission. ECF No. 17 at 10. Specifically, PG&E contends that where Plaintiff's complaint and proposed FAC assert the same single federal claim, it would have to make the same dismissal arguments and again respond to Plaintiff's positions. *Id.* Even so, "[t]hat burden, however, would not seem especially great given [PG&E's] acknowledgement that the proposed [FAC's] facts and claims … are substantially the same as presented in the Complaint[.]" *Patterson v. City of Vacaville*, No. 2:19-cv-0521 JAM DB PS, 2019 WL 2089996, at *1 (E.D. Cal. May 13, 2019). Plaintiff argues that having to respond to an amended pleading is not prejudice, and if it were, Rule 15 would not exist. ECF No. 19 at 9. There is merit to Plaintiff's position. If having to respond to an amended pleading was prejudice which precluded the amendment, there would be no amendment allowed. Legal prejudice is "prejudice to some legal interest, some legal claim, or some legal argument." *Westlands Water Dist. v. United States*, 100 F.3d 94, 96 (9th Cir. 1996). Merely having to respond to a first amended complaint is not prejudicial.

Nor would leave to amend impose undue delay in this litigation because discovery has not yet commenced. *Compare DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987) (holding that a motion to amend made early in the discovery period, with no trial date or pretrial conference pending delay is not generally unjust), *with Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002) (affirming district court's denial of a motion for leave to amend filed five days before the close of discovery). In addition, Plaintiff sought leave to amend a mere two months after the filing of the instant complaint. *See Morongo Band of Misson Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990) (finding leave to amend properly denied when sought after two years); *Texaco, Inc. v. Ponsoldt*, 939 F.2d 794, 799 (9th Cir. 1991) (holding that a plaintiff unduly delayed in seeking amendment where it waited eight months after summary judgment had been granted against it and two years after filing of the initial complaint). The Court finds Defendant's arguments of undue delay and prejudice to be without merit.

**MOTIONS TO E-FILE**

Plaintiff has filed two motions to participate in e-filing. The first was filed shortly after

the action was initiated in September 2025, and the second was filed in December 2025, after the hearing on the motion to dismiss. The first motion to e-file (ECF No. 4) contends that because Plaintiff lives in the Bay Area it would be a hardship for her to travel two hours to file. ECF No. 4. Plaintiff's second motion (ECF No. 21) makes essentially the same argument, contending that she resides over 75 miles away. Plaintiff also argues that she had difficulty meeting a deadline due to limited library access over a holiday weekend. ECF No. 21. Plaintiff is not required to file documents in-person, but can mail them to the Clerk's office. Plaintiff contends she used the law library to prepare the documents, thus she would have been adversely effected in her preparation regardless of the mode of filing. If such circumstances arise in the future, Plaintiff may file a motion seeking a reasonable extension of time.

The Local Rules are clear that "any person appearing pro se may not utilize electronic filing except with the permission of the assigned Judge or Magistrate Judge." *See* Local Rule 133(b)(2). This Local Rule recognizes, as do similar local rules in other Districts, the difficulties that can ensue for both pro se litigants and Court staff when pro se litigants attempt to use e-filing. *See, e.g., Baker v. IC Sys., Inc*., No. CV-08-8091- PCT-DGC, 2008 WL 4186166, at 1 (D. Ariz. Sept. 9, 2008) (denying motion to e-file and stating the "Court's policy is to require pro se litigants to submit documents in paper form so that the Clerk's Office can insure that the documents are properly filed"). The Court finds that Plaintiff's motions to electronically file do not present good cause to deviate from the default under the Local Rules and are thus DENIED. Plaintiff will continue to file paper documents with the Court through conventional means.

**CONCLUSION**

**IT IS HEREBY ORDERED** that:

1. Plaintiff's motions to e-file (ECF Nos. 4 & 21) are **DENIED**.
2. Plaintiff has filed a "Request for Status" (ECF No. 23) which is rendered moot by the entry of this Order.

**IT IS HEREBY RECOMMENDED** that:

1. Defendants' motion to dismiss (ECF No. 5) be **GRANTED**;
2. Plaintiff's motion for leave to amend (ECF No. 14) be **GRANTED** and Plaintiff

allowed 21 days to file a First Amended Complaint; and

3. The matter be referred back to the undersigned for further proceedings.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **fourteen days** after being served with these findings and recommendations, either party may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in waiver of the right to appeal the district court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED: July 24, 2026

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE